and Mr. Phillips. I am of opinion that, in this case, the freight for the round voyage must contribute.

## Case No. 9,189.

### The MARY.

[1 Spr. 51; 6 Law Rep. 73; 9 Hunt, Mer. Mag. 173.] [1]

District Court, D. Massachusetts. March, 1843.

SHIPPING — GENERAL AVERAGE — SALE OF CARGO BY MASTER—NECESSARY REPAIRS—PROFITS—INTEREST.

1. Specie was shipped from Boston for Porto Cabello, for the purpose of purchasing a return cargo, and the vessel put into Antigua on account of a disaster, where the master, being destitute of funds, sold a part of the specie, for the purpose of making repairs, and the vessel proceeded to her port of destination, and thence to Boston. *Held*, that the owners thereof were not entitled to recover the profits which they might have made upon a return cargo, but that they were entitled to interest upon the value of the specie, from the time when they would have had the benefit of it at Porto Cabello, if it had been carried forward with the rest of the cargo.

2. No adjustment of general average was made at Porto Cabello; but this, under the circumstances, did not impair the right of the shipper to interest.

[Cited in Dupont de Nemours v. Vance, 19 How. (60 U. S.) 171.]

The libellants [Shelton and others] shipped a quantity of specie, consisting of five-franc pieces, on board the Mary, from Boston to Porto Cabello, for the purpose of purchasing a return cargo. On the outward passage, the Mary met with a disaster; her masts were cut away, and she put into Antigua for repairs. The master being destitute of funds, and unable to raise them, sold a part of the specie for the purpose of making the necessary repairs, and the vessel afterwards proceeded on her voyage to Porto Cabello; and thence to Boston. It was admitted, that the specie of the libellant, which was thus taken, should be paid for in general average, at its value at Porto Cabello, the port of destination; and it appeared, that five-franc pieces passed at that place, as currency, and of the same value as Spanish dollars. No adjustment of general average was had at Porto Cabello, and none, until since the filing of the libel in this case. The question presented was, whether, in making such adjustment, the libellants should be allowed interest on the specie so taken, from the time when they would have had the benefit of it at Porto Cabello, if it had been carried forward with the rest of the cargo.

Edward Blake and F. C. Loring, for libellants.

B. R. Curtis, for respondents.

SPRAGUE, District Judge. I am of opinion that the libellants are entitled to such in-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission. 9 Hunt, Mer. Mag. 173, gives only a partial report.]

terest. The owner of the cargo is under no obligation to keep the ship in repair. But in certain cases, the law allows the master, from necessity, to sell a part of the cargo without the consent of the shipper, in order to enable the vessel to prosecute the voyage. But in such case, the shipper is to be compensated, and the measure of compensation is to be such as to place him in as good a situation as he would have been in, had the property of some other shipper been taken, instead of his. This is the general rule, and it is manifestly founded both in justice and policy. In conformity to this principle, it is well settled, that the shipper is entitled to be paid for his property, at its full value at the port of destination, deducting certain necessary charges. This, it is supposed, will afford him an indemnity, because, with the money thus paid to him, it is presumed that he can replace the articles taken, or purchase others of equivalent value, at his election.

But it is obvious, that, in order to afford him an indemnity, payment should be made to him at the port of destination. He cannot otherwise be placed in as good a situation, as he would have been in, had the goods of some other shipper been taken. His purpose was to place his cargo in that port. There he needed it to carry forward his enterprise. To refuse this to him while the other shippers have their parts of the cargo carried forward and delivered at the port of destination, would by no means place him in as good a condition as they, and would clearly violate the fundamental principle by which compensation is to be made.

As he had a right to have the goods shipped delivered to him at the port of destination, so has he the right to have that, which, without his consent and for the benefit of others, has been substituted for the goods, delivered to him at the same place. And if this be not done, he is entitled to compensation for the injury sustained thereby.

What shall be the measure of such compensation? The libel asks that it may be the profits which would have been made on the homeward cargo. But this was abandoned at the argument, and very properly. The law cannot go into a speculation of contingent profits, and it presumes that the shipper might have substituted other funds for a return cargo, if he saw fit. Interest is the established measure of damages for the non-payment of money.

The shipper might waive his right to payment at the port of destination. But there is nothing in this case from which such waiver can be presumed, unless it be that the adjustment of the general average was not made up, until since the arrival of the vessel here. But I do not think that sufficient to warrant a presumption, that the shippers voluntarily relinquished their right. They were not personally at Porto Cabello; and it does not appear that any offer of payment was made to their correspondents, or consignees. It must

be inferred, that the captain had no funds, or means of making payment, at Porto Cabello; and as the parties all resided here, the adjustment was properly left to be made by themselves, after the return of the vessel.

I have discussed this case, as if the goods of the libellants had been sold. But it is proved, that the five-franc pieces passed as currency, and were money at Porto Cabello. If this makes any difference, it strengthens the claim, bringing it more directly within the case of Sims v. Willing, 8 Serg. & R. 103, and the remarks of the author in 2 Phil. Ins. (2d Ed.) p. 131.

All the authorities cited at the bar tend in some degree to sustain the positions above taken. In many of them, and particularly in the case of The Packet [Case No. 10,654], such taking of the property of a shipper is regarded as a forced loan. And surely as much compensation should be made by the law in case of a forced loan, as is ordinarily allowed when the lending has been voluntary. Judgment accordingly.

---

## Case No. 9,190.

### The MARY.

[1 Spr. 204.] [1]

District Court, D. Massachusetts. July, 1852.

SEAMEN'S WAGES — COASTING LICENSE — ILLEGAL VOYAGE—RIGHT TO RECOVER—KNOWLEDGE OF SHIP'S PAPERS.

1. Seamen on board of a small vessel, under a coasting license, employed in collecting and taking paving stones from Marshfield and Scituate beaches, and conveying them to Boston, the whole passage being within the ebb and flow of the tide, have a lien upon the vessel for their wages.

[Cited in The Buffalo, Case No. 2,111. Distinguished in Raft of Cypress Logs, Id. 11,527. Cited in The Minna, 11 Fed. 760.]

[See The Charles F. Perry, Case No. 2,616.]

2. If a vessel is engaged in the coasting trade, without a license, and that fact is not known to a seaman, it does not affect his right to wages. It is not incumbent upon a seaman to examine the vessel's papers, to see if the voyage be legal.

[Cited in The Norfolk, Case No. 10,297.]

This was a libel promoted by David Downing and others, of the crew of the schooner Mary, in a cause of subtraction of wages. It appeared that the vessel was employed in bringing paving-stones from Scituate and Marshfield beaches, to Boston, and the libellants were employed in loading the vessel with the stones, at the various places where they were obtained, navigating the vessel to Boston, and unloading her. The schooner had a coasting license, which expired on the 14th April, 1852; after which, and before the renewal of the license, she made one trip to Scituate. The claim of the libellants was for services on that trip. It was insisted in the defence, that the services of the libel-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

lants were not properly maritime, the compensation for which creates a lien upon the vessel; that the trip made after the expiration of the license, was illegal, and that no wages could be recovered for services on an illegal voyage.

H. C. Hutchins, for libellants.
R. H. Dana, Jr., for respondents.

SPRAGUE, District Judge. The first ground of defence is, that the services of the libellants were not maritime. In the supreme court of the United States, in the case of The Jefferson, 10 Wheat. [23 U. S.] 428, it was decided that the services must be rendered upon a vessel whose passages were upon the high seas, or within the ebb and flow of the tide. Judge Hopkinson, in the case of Thackarey v. The Farmer of Salem [Case No. 13,852], a vessel under fifty tons burden, the business of which consisted in going across the river, about two miles, for wood, the passage seldom occupying more than an hour, held that the admiralty had no jurisdiction. The same judge sustained the jurisdiction in the case of a vessel plying between Philadelphia and Smyrna, in Delaware, entirely a river navigation, but within the ebb and flow of the tide. Smith v. The Pekin [Id. 13,090]; Wilson v. The Ohio [Id. 17,825]. In Packard v. The Louisa [Id. 10,652] a small vessel carried stones from Quincy to Boston, and the men on board not only loaded and unloaded them, but assisted, also, in laying them into the wharves and other structures; and Judge Woodbury intimated that they had no lien upon the vessel. In my opinion, persons employed in navigating vessels, engaged in transporting goods upon tide-water, although within a harbor, are engaged in the maritime service, and have a lien upon the vessel for their wages, which may be enforced in the admiralty. If such service is merely incidental, and subsidiary to some other, as the quarrying of stone for the building of wharves, then the whole cannot be deemed maritime; but if the taking on board of the stones, and the discharging or laying them into the walls of the wharf, are merely incidental and subsidiary to the maritime employment of the vessel, then the whole contract service is maritime, and the suit thereon may be brought in the admiralty. In the present case, the vessel in her passage for the paving stones, went upon the high seas. After leaving the outer light, she was extra fauces terræ. While taking in her cargo, she was upon the high seas. It appeared, by the evidence, that the libellants were seamen, and that they signed shipping articles for a coasting voyage. Their contract, therefore, was maritime.

As to the objection of the illegality of the last trip or voyage, there is no evidence that the seamen were aware that the vessel had not the requisite papers. It is not incum-